All right, things have settled down. Mr. Wright, we'll be glad to hear from you. Good morning, Your Honors. May it please the Court, I'm Phil Wright for the United States and also with me is Monica Coleman from my office. Your Honors, the West Virginia crime of unlawful wounding is a crime of violence under the Force Clause of the Sentencing Guidelines because it requires proof that a defendant act with an intent to inflict harm, to kill, to permanently maim, disable, or disfigure, and thereby cause bodily injury. And one cannot cause that kind of injury with that intent unless one uses violent force as defined by the Supreme Court in its Johnson decision of 2010. That is to use... It was our decision which came out after briefing in this case, but you did identify it in a 28-J letter. Does our decision in Irby control the outcome of this case? Your Honor, I believe it does. I also believe Reed controls the outcome of this case. Reed indicates quite clearly that Castleman has abrogated the analysis of Torres Miguel and therefore to rely on poisoning as an example of how the crime could be committed without the use of violent force is wrong. In fact, Reed specifically said that in light of Castleman, indirect application is no longer valid. Does that end our inquiry in this case? Your Honor, I think if you also look at what Reed actually dealt with, Reed dealt with a Virginia crime of knowingly and willfully inflicting bodily injury on non-prisoners in a correctional facility. And that crime involved the specific intent to harm. And as a result, this Court said that the knowingly and willfully inflicting bodily harm element squarely matches the force clause in the Armed Career Criminal Act, which is identical to the sentencing guidelines, in that it requires force capable of causing physical pain or injury to another person. That's the definition of violent force in Johnson. What holds true for that crime, the Virginia crime, also holds true here. And as a result, you cannot simply look at the elements in isolation or as the First Circuit said in Edwards, which is another case we brought to the Court's attention in a 28-J letter, you can't put blinders on to look at these elements. When you have to look at the causing bodily injury and combine it with that intent, therefore in that case it dealt with assault with intent to murder. Assault might normally include something like unconsented or offensive touching. But when you add in the presence of the intent to murder, that rendered that crime a violent crime. Similarly, with our statute, the intent to kill or to permanently maim, disable or disfigure renders our crime a crime of violence. And therefore, to rely on poisoning and not recognize that Castleman has abrogated Torres Miguel was erroneous. We also think the Court erred in relying on the hypotheticals that are at page 89 and 90, or no, page 102 of the joint appendix, withholding medicine from a gravely ill patient, tricking someone into backing their car out of the driveway. Those actually do involve violent force. I think Irby actually gives that very similar hypothetical, that case the defendant posited a hypothetical about convincing someone to expose themselves to hazardous chemicals. The Court said that it is enough that the defendant acted to put the victim in the path of an inevitable force. That's exactly what would happen if you trick someone into backing their car out into the street so an oncoming vehicle would hit that person. In the end, Your Honors, the statement by Justice Scalia in his concurring opinion in Castleman to the effect of it is impossible to cause bodily injury without using a force capable of producing that result holds true here and especially holds true where one actually tries to produce that result. So it is our intention that the District Court erred by holding that West Virginia crime of unlawful wounding is not a crime of violence and not sentencing Mr. Covington as a career offender. If I'm reading the West Virginia statute correctly, the intent to maim, disfigure, disable or kill applies both to unlawful and malicious wounding? Yes, Your Honor. So that eliminates a mens rea of recklessness? I'm sorry? Eliminates a mens rea of recklessness? In that case, yes, Your Honor, it does. Thank you. What is the role of your review of all of the cases that had been prosecuted under the statute? Your Honor, we did that at a time when we didn't have the benefit of Reed and I think our brief might have been a little bit different if we'd had Reed before we filed the brief. But we were trying to show that the hypotheticals that were used by the District Court below are theoretical possibilities but not realistic probabilities. With that, Your Honor, I would yield the lectern to my colleague and I reserve the time for rebuttal. Thank you, Mr. Wright. Mr. Seward. May it please the Court, Your Honors, my name is Philip Seward and I represent Donald Covington in this matter. I want to first start by acknowledging the precedents in Reed and Irby that were issued this summer and the impact that they have on this case. However, I think that those cases can be distinguished from this case and could result in an interpretation that the West Virginia Unlawful Wounding Statute does not categorically require crime of violence for purposes of a career offender enhancement. First for two reasons. First off, I believe that the application of counsel as articulated in Irby and expounded upon even more so in the Reed case is improper because I think that it does not address all of the language and the scope of the Castleman case. Now obviously the Castleman case I want to be sure where you're going here. You're saying that Irby and Reed are wrong? I believe they were wrongfully decided with respect to the reasoning that suggests that indirect force can be applied to these scenarios. And that is because of So if we have two panels of the Court that have rendered a decision, a published decision that construes a decision of the United States Supreme Court, what authority does this panel have to hold to the contrary? Your Honor, the Court is bound by the Reed case and the Irby case. I don't dispute that. However, I think that some notation has to be given with respect to its application of the propriety of considering indirect force in light of Castleman's clear holding or references that one, that decision was limited to misdemeanor crimes of domestic violence and two, that the references that discounted the use of indirect force with respect to poisoning, for instance, Justice Sotomayor expressly used the language in the common law since indirect force would not constitute, or I'm sorry, would constitute force. She said that two times in her decision in the Castleman case, specifically with respect to her language that, excuse me, Your Honor. To follow up on what Judge Agee just said, are you suggesting that this panel in some way do something other than what has been set forth in those two published opinions? If we've got to accept that, is this where your argument should go or should you tell us in light of the fact that we've got to accept it, how we get to where you want to get to? That's right, Your Honor. I accept that the court is bound by its precedent. You accept that we're bound. Yes, Your Honor. If we are bound, what value is it for you to now question those opinions? If we're bound, how do we get to your result being bound by that precedent? Well, Your Honor, first of all, I would proffer that the court can consider the limitation of Castleman to the common law and to battery, which doesn't apply to the career offender status. I think that Castleman or Irby and Reed discuss how we get to that point, how we get to the application of whether or not we accept indirect or direct force as categorically requiring violence. I mean, the Castleman case specifically reserved the question of whether bodily injury requires violent force. So I think that when we apply that to the statute at hand, the West Virginia unlawful wounding statute, the question the court has to ask in analyzing the statute is whether the breadth of the statute necessarily encompass that sort of force. And I don't believe that it does because of the broadness of the statute. And there's some differentiation between the statute in our case and the statutes that were considered in Reed and Irby, specifically with respect to the word unlawful. And I think that that is something that the court can look at. Do I have to unlawfully shoot, stab, cut, or wound with the intent to maim, disfigure, disable, or kill? Correct? That is correct, Your Honor. Do you agree that under that language, there cannot be a mens rea of recklessness covered by the statute? I would agree with that, Your Honor, yes. So how do we get to where you want to go? We only get there by acknowledging the rationale of the district court. And that is through the indirect use of force. But I would say that there are some other considerations that the district court didn't articulate on the record with respect to unlawfulness and use of force. I think numerous scenarios, there's some hypotheticals, obviously, that the court has considered in the briefs. They've been articulated. And with respect to some cases that were cited in the Reed case, specifically the Reed case cited two Virginia cases that have remarkably similar language to the West Virginia unlawful wounding statute. One of those is Banovich v. Commonwealth. And the court discussed that, but then put it aside with respect to its analysis that that case required indirect use of force, and indirect use of force is the use of force. However, I believe that that case illustrates perhaps even no use of force at all is necessary for the commission of these types of crimes that have as an element the ability to cause harm by any other means. In that case, a doctor merely prescribed a salve that should have or purportedly would have healed a person but did not. It actually caused her harm. And she applied the salve and it hurt her. It caused greater harm. In that case, I think that you can interpret that case as not requiring any force at all. But I think that the West Virginia unlawful wounding statute can have a similar effect as that case. And I would draw to the court's attention the concept that's gaining a lot of legal traction these days, and that's bullying and cyberbullying. And I believe that we could have a scenario in West Virginia where somebody could threaten or harass somebody with the intent to cause them harm through a communication, a harassing communication, that could result in harm and could be prosecuted under this statute. Now, I do not have an example of that happening under West Virginia law, but I would point to the case, the state case that recently occurred in Massachusetts where How can you shoot, stab, cut, or wound somebody by cyberbullying? Well, Your Honor, I think that if you unduly harassed someone and they indeed, let's say took it on themselves to commit suicide or attempt to commit suicide and that caused bodily injury, you may do that with the intent to disable or kill them. And I would point to that recent case where a lady was convicted on a murder charge in Boston for suggesting that a person should kill themselves, and they actually did. Now, if the injury actually didn't result in death and wasn't prosecuted as a murder or did result as a murder, this could be prosecuted as a frontline charge or even as a lesser included offense if the person did not kill themselves. And we're seeing that happen. West Virginia actually has a cyberthreat statute, which is codified in West Virginia Code 61-3C-14C. It's a bullying statute, and it makes it unlawful, the same language as our statute, to make harassing communications or a threat to commit a crime against a person. And I think that we see now a realistic possibility of prosecutions in West Virginia for harassment. So I think that it is possible that this statute, the unlawful wounding statute, could, in effect, under that type of framework, become almost a threat statute, the same type of threat statute that the court considered in Torres-Miguel. And even though the Reed and Irby cases called into question and abrogated the reasoning under Torres-Miguel. Imagination that all the courts are telling you you just can't do. You're thinking up these scenarios. And isn't that exactly what the courts are telling, the Fourth Circuit is telling you you can't do? Yes, Your Honor. And I acknowledge that line of reasoning in the recent decision, Fourth Circuit of Sammons. The court considered the use of hypotheticals and discussed the realistic possibility. But I think in light of the West Virginia statute making it unlawful to harass somebody and acknowledging that if that results in harm, there will be prosecutions. And in light of the trend nationwide to prosecute these types of crimes, I think that that makes it more of a realistic possibility. Although, you're correct, I don't have a specific example of state case law. However, with respect to the government's addendum of cases that address the Supreme Court cases on criminal and unlawful wounding statute, I would suggest that there is an element of unfairness in considering those as purely dispositive on what is being prosecuted as unlawful wounding. Those are only the cases, obviously, that have made it to the Supreme Court. And the Supreme Court has considered that does not answer of the 55 counties in West Virginia which of those prosecutors are charging individual defendants with this crime and the factual basis for those charges. So I think that it puts In the lawsuit, we have to look to the Supreme Court. You do, Your Honor, for the interpretation. I'm only suggesting that the court, I can't address the court nor can the government what people are actually being charged with and the factual basis for those charges because we don't know. We only know the worst of the worst cases that make it to the Supreme Court in those interpretations. So I think that for that purpose, the court has to take a broad interpretation about what the statute says and whether the statute categorically requires the use of force. And to that extent, I think that we can consider other realistic possibilities. Do you have any questions? If there's no other questions, thank you, Your Honor. Thank you, Mr. Zortz. Mr. Wright. Thank you, Your Honor. Regarding the argument that Castleman may not apply, I think that argument was squarely addressed in Reed when the court said that the court's formal reservation of the Supreme Court's formal reservation of a certain issue does not foreclose application of the relevant aspects of its reasoning. And its reasoning was that Torres' and McGill's reasoning can no longer support an argument that the phrase use of force excludes indirect applications. Your Honor, and to take the example of cyberbullying, if someone actually caused another person to die, I think Irby said it directly, it is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed. To hold that West Virginia's unlawful wounding statute is not a crime of violence would just create more confusion in the courts below, not be consistent with Congress's intent that violent recidivists be punished more severely than other criminals. The crime of unlawful wounding, which requires intentional infliction of injury upon another person, is an archetypal crime of violence. And we ask this court to vacate the judgment and to remand it for resentencing. Thank you, Mr. Wright. Mr. Stewart, I note that you're court appointed. We appreciate very much your undertaking representation, Mr. Covington. I'll ask the clerk to adjourn court and then we'll come down and greet counsel.
judges: William B. Traxler, Jr., G. Steven Agee, Loretta Copeland Biggs